UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re: Gregory S. Mack,

          Debtor

**GREGORY S. MACK,**

          **Appellant,**

-vs-                                          Case No. 6:06-cv-1782-Orl-19

**GENE CHAMBERS, GRANGE
MUTUAL CASUALTY CO.,
GRANGE INDEMNITY CO.,
TRUSTGARD INSURANCE CO.,
ALLSTATE INSURANCE CO.,
LIBERTY MUTUAL INSURANCE CO.,**

          **Appellees.**

_____

# ORDER

This case comes before the Court on the following:

1. Appellant-Debtor Gregory Mack's Notice of Appeal (Doc. No. 1, filed Nov. 29, 2007);

2. Appellant-Debtor Gregory Mack's Initial Brief (Doc. No. 26, filed Jan. 5, 2005);

3. Brief of Appellees, Grange Mutual Casualty Company, Grange Indemnity Insurance Company, and Trustgard Insurance Company (Doc. No. 34, filed Feb. 4, 2007);

4. Appellees Brief of Allstate and Liberty (Doc. No. 35, filed Feb. 5, 2007); and

5. Appellant-Debtor Gregory Mack's Reply Brief (Doc. No. 38, filed Feb. 21, 2007).

**Background**

Appellant-Debtor Gregory Mack ("Mack") appeals an Order of the United States Bankruptcy Court for the Middle District of Florida ("Bankruptcy Court") granting Appellees Motion for Relief from the Automatic Stay under 11 U.S.C. Section 362. (Doc. No. 1, Doc. No. 1-2).

Mack, a Florida resident, operates health clinics in Kentucky. (Doc. No. 3-3, p. 3, l. 12-21). Appellees include multiple insurance companies that are suing Mack in the United States District Court for the Eastern District of Kentucky ("Kentucky Case") for submitting fraudulent claims.[1] (Doc. No. 3-8).

The Kentucky Case involves claims under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Section 1961 *et seq.*, and Florida and Kentucky state law. (Doc. No. 3-13). On October 21, 2005, the Kentucky District Court issued an Order granting Appellees' motion to compel discovery and imposing sanctions against Mack and his co-defendants. (Doc. No. 3-28). The Kentucky District Court found that Mack and his co-defendants acted in bad faith and willfully failed to comply with court orders.[2] (*Id.* at p. 18). Therefore, the Kentucky District Court struck their answers and entered a default against them. (*Id.*) On February 8, 2006,

---

[1] The Kentucky case is styled as *Grange Mutual Casualty Company, et al. v. Mack, et al.,* Case No. 3:02-cv-110-JMH. (Doc. No. 3-8). Appellees include Grange Mutual Casualty Company, Grange Indemnity Insurance Company, and Trustgard Insurance Company (collectively "Grange") and Allstate Insurance Company and Liberty Mutual Insurance Company (collectively "Allstate/Liberty"). The underlying Bankruptcy Court Order addressed the arguments of all Appellees for vacating the automatic stay together. (*See* Doc. No. 1-2). The Court finds that the positions of Grange and Allstate/Liberty are sufficiently similar to warrant analyzing their arguments on appeal together. (*Compare* Doc. No. 34 *with* Doc. No. 35). Unless otherwise noted referenced to "Appellees" includes both Grange and Allstate/Liberty.

[2] The Order in the Kentucky Case specifically stated that striking the answer and entering a default was "the only sanction that is adequate in light of the wilful, prejudicial, and repeated obstruction . . . and their repeated disregard of the Court's orders." (Doc. No. 3-28, p. 18).

before a final default judgment was entered in the Kentucky Case, Mack filed a voluntary petition for Chapter 7 bankruptcy. (Doc. No. 2-2). Appellees have unsecured, nonpriority claims against Mack in the bankruptcy case. (*Id.* at pp. 22, 26). Pursuant to 11 U.S.C. Section 362(a), Mack's petition for bankruptcy automatically stayed the Kentucky Case. Appellees moved for relief from the stay in order to pursue the claims in the Kentucky Case. (*See* Doc. No. 2-3, Doc. No. 2-10, Doc. No. 2-18).

On June 14, 2006 the Bankruptcy Court held an evidentiary hearing on Appellees' Motions. (Doc. No. 1-2, p. 1). The Bankruptcy Court found that Mack "stepped into this bankruptcy case with unclean hands . . . [because his] primary purposes in filing this bankruptcy case, based upon the timing and the circumstances of the filing, was to frustrate the [Appellees] and delay the Kentucky Litigation." (Doc. No. 1-2, p. 3-4). The Bankruptcy Court also noted that the Kentucky District Court found that Mack had acted in bad faith in that case. (*Id.* at pp. 3, 7). Thus, the Bankruptcy Court concluded that "[e]quity compel[ed] granting relief from the stay . . . [because Mack], due to his lack of good faith and unclean hands, is not entitled to the benefits of the automatic stay. . . ." (*Id.* at p. 7). Additionally, the Bankruptcy Court found that it would be a more efficient use of judicial resources to allow the Kentucky Case to proceed because: (1) the Kentucky Case involves complex RICO and state law issues; (2) almost all witnesses, parties and documents are located in Kentucky; and (3) the judge presiding over the Kentucky Case is intimately familiar with the case and is in the best position to adjudicate it. (*See id.* at pp. 4, 7). Although litigating in Kentucky would be prejudicial to Mack, the Bankruptcy Court found that any prejudice to Mack was far outweighed by the hardship Appellees would face from litigating in Orlando. (*Id.* at pp. 4,7). Moreover, the Bankruptcy Court found that litigating in Kentucky would not unduly prejudice the

bankruptcy estate. (*Id.* at pp. 4, 7). The Bankruptcy Court also cited the discretionary abstention provision, 28 U.S.C. Section 1334(c)(1), and noted that despite the fact that it had jurisdiction over Appellees' claims against Mack, that the it was in "the interests of justice" to abstain in favor of "[a]llowing the Kentucky Litigation to proceed." (*Id.* at p. 8). On the basis of all of the factors discussed, the Bankruptcy Court granted Appellees relief from the stay and abstained from hearing Appellees' claims against Mack so that Appellees could pursue their claims in the Kentucky Case. (*Id.*)

Mack appealed the Bankruptcy Court's Order, asserting four issues. (Doc. No. 1, Doc. No. 1-4). Mack asserts that the Bankruptcy Court erred in: (1) considering his failure to provide discovery and his "bad faith" in the Kentucky Case as a basis for granting relief from the stay in the instant case; (2) finding that the prejudice to Appellees in denying relief from the stay outweighed prejudice to him by granting relief; (3) finding that relief from stay would not prejudice the bankruptcy estate and other creditors; and (4) abstaining from hearing Appellees' claims against him. (Doc. No. 1-4).

**Standard of Review**

The District Court has jurisdiction to hear appeals from final orders of the Bankruptcy Court under 28 U.S.C. Section 158(a). An order granting or denying relief from an automatic stay is considered final and is reviewable on appeal for abuse of discretion. *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989). The bankruptcy court's decision to abstain under 28 U.S.C. Section 1334(c)(1) is also appealable and can be reviewed for an abuse of discretion. *Matter of Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6 F.3d 1184, 1188 (7th Cir. 1993). A court abuses its discretion if it applies the wrong legal standard, uses improper procedures to reach its result or

makes factual findings that are clearly erroneous. *In re Bayshore Ford Truck Sales, Inc.,* 471 F.3d 1233, 1251 (11th Cir. 2006) (citations omitted).

When reviewing Bankruptcy Court order, the District Court must give "due regard" the Bankruptcy Court's opportunity to evaluate witness credibility. FED. R. BANKR. P. 8013. Factual findings, whether based on oral or documentary evidence, cannot be set aside unless they are clearly erroneous. *Id.* "[F]indings of the trial court, when dependent upon oral testimony where the candor and credibility of the witnesses would best be judged, [have] great weight." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on entire evidence is left with the definite and firm conviction that mistake has been committed." *Id.* The Bankruptcy Court's conclusions of law are reviewed *de novo*. *In re Club Associates,* 956 F.2d 1065, 1069 (11th Cir. 1992).

**Analysis**

**I.    The Bankruptcy Court's Decision to Lift the Stay Was Not an Abuse of Discretion.**

Title 11 U.S.C. Section 362(d)(1) allows the Bankruptcy Court upon request of a party and after notice and hearing to grant relief from the automatic stay "for cause." Courts conduct a case-by-case inquiry and apply a totality of the circumstances test to determine whether cause for relief from the stay exists. *In re Alosi,* 261 BR. 504, 508 (Bankr. M.D. Fla. 2001). The Bankruptcy Court balances a series of factors, including but not limited to "efficient use of judicial resources, the location of witnesses, documents, and other necessary parties . . . [and] whether a creditor has a probability of success on the merits of his case." *Id.* The decision to lift the stay is within the discretion of the Bankruptcy Court Judge. *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989).

**A.      The Bankruptcy Court's Factual Finding that the Prejudice to Appellees from Litigating in Orlando Outweighs the Prejudice to Mack from Litigating in Kentucky is Not Clearly Erroneous.**

On appeal, Mack contends that the Bankruptcy Court erred in finding that the prejudice to Appellees from litigating in Orlando outweighed the prejudice he would suffer if he were forced to litigate in Kentucky where he has no legal representation. (Doc. No. 1). The only specific argument of prejudice Mack offers is he will "suffer substantial hardship and prejudice from a relief from the stay" because he is unrepresented in the Kentucky Case and does not have enough funds to defend himself. (Doc. No. 26, pp. 14-15). Mack supports his argument with citations entirely to his own testimony. (*See id.*) Although Mack testified that he will face significant prejudice, Mack's own testimony does not provide a strong enough basis for the Court to conclude the Bankruptcy Court's finding regarding the balance of prejudices was clearly erroneous.

Foremost, multiple courts have reasoned that the threat of additional legal expenses alone is not sufficient prejudice to justify lifting the automatic stay. *See, e.g., In re Walker,* 927 F.2d 1138, 1143 (10th Cir. 1991); *Matter of Stoneking,* 222 B.R. 650, 656 (Bankr. M.D. Fla. 1998); *In re Harris,* 85 B.R. 858, 860 (Bankr. D. Colo. 1988). Moreover, a fact finder hearing oral testimony is required to make credibility determinations. As the fact finder, the Bankruptcy Court made an implicit credibility determination that Mack's testimony was not convincing enough to establish that he would suffer more prejudice than Appellees.[3] Because the Bankruptcy Court heard the testimony

---

[3] Although Mack testified regarding potential prejudice, there are inconsistencies and admissions in Mack's testimony which could be read to support a finding that he was not credible. For instance, Mack's primary allegation of prejudice is that he cannot afford a lawyer, and therefore, cannot mount an effective defense in the Kentucky Case. (Doc. No. 26, pp. 14-15). However, Mack
(continued...)

in the first instance, the Court must give its credibility determinations and factual findings significant credence. FED. R. BANKR. P. 8013. *See also United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Mack has failed indicate any basis proving the Bankruptcy Court's findings were clearly erroneous.

Additionally, there is support for the fact that the Appellees will face significant prejudice from litigating in Orlando in the record. The Kentucky Case contains additional unrelated defendants who are not parties to the instant case. (*Compare* Doc. No. 1-7 *with* Doc. No. 3-8; Doc. No. 3-3, p. 31). The automatic stay provision does not apply to nondebtors, so Appellees will also have to pursue the Kentucky Case. *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997); *In re Sunbeam Sec. Litig.,* 261 B.R. 534, 536 (S.D. Fla. 2001). Therefore, forcing Appellees to proceed against Mack in Orlando would require them to litigate substantially similar claims in two different forums.

The Bankruptcy Court reached a conclusion that was supported by the evidence. The Bankruptcy Court's acceptance of one of two permissible conclusions is not clearly erroneous. As it is based on facts of record and was derived from determining the credibility of witnesses, it may not be reversed even if this Court is convinced, which it is not, that it would have decided the factual issue differently. *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985).

---

[3](...continued)
admitted that he had significant assets on cross examination. (*See* Doc. No. 3-3, pp. 11-27).

**B.      There is a Proper Basis for the Bankruptcy Court's Finding that Litigating in Kentucky is Not Overly Prejudicial to the Bankruptcy Estate or Other Creditors.**

Mack contends that the Bankruptcy Court erred in finding that lifting the stay did not prejudice the bankruptcy estate or other creditors. (Doc. No. 1). However, Mack's initial brief cites no evidence that continuing the Kentucky Case will prejudice the bankruptcy estate or other creditors. (*See* Doc. No. 26, pp. 14-15). Mack's only argument is that he will "suffer substantial hardship and prejudice from a relief from the stay" because he is unrepresented in the Kentucky Case and does not have enough funds to defend himself. (*Id.*) In his reply brief, Mack claims that filing for bankruptcy benefits the majority of his creditors, because Appellees, who are the most aggressive unsecured creditors, will receive a disproportionate amount of his assets. (Doc. No. 38, p. 6). However, Mack has waived this argument by failing to raise it in his initial brief. *See, e.g., Spann v. Cobb County Pretrial Court Servs. Agency,* 206 Fed. Appx. 910, 910 n. 1 (11th Cir. 2006) (arguments not raised in initial appellate brief are waived); *United States v. Dicter*, 198 F.3d 1284, 1289 (11th Cir. 1999) (arguments raised for the first time in a reply brief are waived).

Even if there was no waiver, Mack's argument is legally insufficient. Mack's reply brief makes vague references to his bankruptcy schedules and argues that bankruptcy is necessary to ensure that his assets are fairly distributed among all his unsecured creditors. (Doc. No. 38, p. 6). However, attorney argument is not evidence. *See United States v. Murray,* 154 Fed. Appx. 740, 745 n. 7 (11th Cir. 2005) (noting that it is proper to instruct the jury that what attorneys say in argument is not evidence).

The Bankruptcy Court explicitly found that "[n]o great prejudice to the bankruptcy estate will result in permitting the Kentucky Litigation to proceed."[4] (Doc. No. 1-2, p. 4). The Bankruptcy Court's finding is supported by the fact that the Chapter 7 Trustee did not oppose Appellees' Motion to lift the stay.  ( Doc. No. 1-7; Doc. No. 3-3, p. 27).  Therefore, the Court finds that is no basis for concluding that the Bankruptcy Court's finding was clearly erroneous.

### C. Consideration of Mack's Bad Faith Was Not Improper.

Mack's argument on appeal is that the Bankruptcy Court erred in considering its alleged bad faith prior to filing his petition for bankruptcy. (Doc. No. 26, pp. 9-14).  Mack contends that "[n]o court employing a balancing test to consider relief from a Chapter 7 stay has considered the debtor's alleged bad faith prior to his filing his bankruptcy petition." (*Id.* at p. 10)  Mack argues that consideration of his prepetition bad faith as justification for lifting the stay constitutes reversible error, but he fails to cite any legal precedent directly supporting his position.  (*Id.* at pp. 10-12).

Mack's argument is not well taken.  Foremost, Mack's argument that the Bankruptcy Court justified its decision based on his alleged bad faith in the Kentucky Case is not supported by the language of the Bankruptcy Court's Order.  (*See* Doc. No. 1-2).  Mack is correct in his contentions that the Bankruptcy Court: (1) noted that the Kentucky District Court found he acted in bad faith; and (2) found that he stepped into the bankruptcy case with unclean hands.  (*Id.* at pp. 2-3).

---

[4] The Court notes that the Bankruptcy Court's conclusions of law include the statement that "[a]llowing the Kentucky Litigation to proceed in Kentucky will not prejudice the bankruptcy estate." (Doc. No. 1-2, p. 7). However, the factual finding on which the conclusion was based was that there was "[n]o great prejudice to the bankruptcy estate." (*Id.* at p. 4). In light of the factual finding of minimal prejudice, it is highly unlikely that the Bankruptcy Court intended to use such strong language in its conclusions of law. Therefore, the Court will construe the statement in the Bankruptcy Court's conclusions of law to mean that there is no substantial prejudice to the bankruptcy estate.

However, the Bankruptcy Court's Order does not indicate that the Kentucky District Court's finding of bad faith is the basis of the Bankruptcy Court's finding of "unclean hands." Immediately after the Bankruptcy Court found that Mack stepped into the instant litigation with unclean hands, the Bankruptcy Court explicitly found that circumstances and timing of the filing of the Chapter 7 petition indicate that Mack's purpose in filing the instant case was "to frustrate the Movants and delay the Kentucky Litigation." (*Id.* at pp. 3-4). The Bankruptcy Court's discussion of the Kentucky Litigation was not intended to form the basis of a finding of bad faith in the instant case; rather it was intended to indicate that Mack had improper motivation in filing his bankruptcy petition and therefore was not entitled to the automatic stay.[5] (Doc. No. 1-2, p. 7 ("He had unclean hands in the Kentucky Litigation and filed this bankruptcy case with unclean hands with the purpose to further thwart the Kentucky Litigation. The Debtor, due to his lack of good faith and unclean hands, is not entitled to the benefits of the automatic stay as to the Kentucky Litigation.")). The Court's position is supported by Mack's own testimony that the primary reason he filed for bankruptcy is because he he was unable to continue defending himself in the Kentucky Case. (Doc. No. 3-3, p. 1).

---

[5] Mack was facing the prospect of a default judgment in the Kentucky Case. (Doc. No. 3-28). The Kentucky District Court Ordered Grange to refile a motion for final default judgment on January 26, 2006 if Mack did not produce required discovery materials. (Doc. No. 3-8, p. 44, entry 226). The docket sheet of the Kentucky Case indicates the Mack did not produce the required discovery materials. (*See id.* at p. 45, entry 230 (Motion to compel production filed by Grange filed Jan. 24, 2006), p. 46, entry 240 (Renewed Motion to compel filed by Grange filed Feb. 2, 2006)). Mack filed his voluntary petition for Bankruptcy on February 9, 2006. (Doc. No. 2-2). The Bankruptcy Court Order's findings of fact state that Mack filed his petition to take advantage of the automatic stay provision in order to avoid the entry of final default judgment against him in the Kentucky Case. (*See* Doc. No. 1-2 p. 3).

The Bankruptcy Court's finding of Mack's bad faith is based on his bad faith in filing for bankruptcy. Cause for relief is usually found to exist when a debtor files his bankruptcy petition in bad faith. *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989)(Chapter 11); *In re Natural Land Corp.,* 825 F.2d 296, 297 (11th Cir. 1987)(Chapter 11). The Court's own research has also disclosed Chapter 7 bankruptcy cases that have explicitly considered the motives of the debtor in filing when deciding whether to lift the automatic stay. *See, e.g., Matter of Reitnauer,* 152 F.3d 341, 344, 344 n. 15(5th Cir. 1998) (Chapter 7 case holding that lifting stay was not an abuse of discretion and reasoning that "[a] debtor's lack of good faith in filing a bankruptcy petition may be an appropriate ground for lifting the automatic stay."); *In re Coleman*, 1999 WL 787401, *2 (N.D. Tex. Sept. 30, 1999) (Chapter 7 case stating "bad faith filing can constitute statutory 'cause' sufficient to justify the court granting relief to a creditor by lifting the stay."). Furthermore, Mack admits that a debtor's bad faith in filing for bankruptcy is cause for lifting the automatic stay.[6] (Doc. No. 38, p. 5). Therefore, the Court finds that there is nothing improper in the Bankruptcy Court's discussion of Mack's alleged bad faith.

---

[6] In his Reply Brief Mack contends that he filed his bankruptcy petition in good faith. (*See* Doc. No. 38, pp. 5-7). However, Mack never presented this argument in his Notice of Appeal or argued that he had proper motive for filing his petition in his Initial Brief. (*See* Doc. No. 1; Doc. No. 26). Consequently, Mack has waived his ability to argue facts and circumstances which indicate his good faith motivation for filing for bankruptcy. *See, e.g., Spann v. Cobb County Pretrial Court Servs. Agency,* 206 Fed. Appx. 910, 910 n. 1 (11th Cir. 2006) (arguments not raised in initial appellate brief are waived); *United States v. Dicter*, 198 F.3d 1284, 1289 (11th Cir. 1999) (arguments raised for the first time in a reply brief are waived). Even if Mack had not waived such challenge, there is evidence to indicate that his decision to file for bankruptcy was not done in good faith. (*See* Doc. No. 3-3, p. 1 (Mack's testimony that he filed for bankruptcy because he was facing default and was unrepresented in the Kentucky Case)).

**D.     Even if the Bankruptcy Court Considered Mack's Alleged Bad Faith in Kentucky it is Harmless Error.**

Alternatively, even if the Bankruptcy Court considered Mack's alleged bad faith in Kentucky, it is harmless error. Contrary to Mack's contentions, bad faith was not the sole basis for Bankruptcy Court's decision. The Bankruptcy Court considered "the totality of the facts and circumstances of this case" and explicitly referenced four factors, only the last of which can be potentially construed as involving Mack's conduct in the Kentucky Case. (Doc. No. 1-2, p. 7). In addition to the Bankruptcy Court's conclusion that "equity compels granting relief," the Bankruptcy Court explicitly found that: (1) it was a more efficient use to judicial resources to allow the Kentucky Case to proceed because the case had progressed much farther, the majority of the parties and witnesses are located there, and the presiding judge was already familiar with all of the issues and parties; (2) the prejudice to Appellees in litigating in Orlando outweighs the prejudice to Mack from litigating in Kentucky; and (3) allowing the Kentucky Case to proceed will not prejudice the Bankruptcy estate. (*Id.*)

As previously noted, the decision of lift the automatic stay is discretionary. *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989). When the Bankruptcy Court hears testimony and makes factual findings based on the evidence received, this Court cannot substitute its own interpretation of the facts for that of the Bankruptcy Court merely because the facts can be construed in a different way. *See Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985). The Bankruptcy Court may not be reversed if its factual findings are not clearly erroneous and adequately justify its discretionary conclusion. *Cf. id.* at 577 ("[W]e cannot say that either interpretation of the facts is illogical or implausible. Each has support in inferences that may be drawn from the facts in the

record; and if either interpretation had been drawn by a district court on the record before us, we would not be inclined to find it clearly erroneous."). Even if there was no finding of bad faith, it is not an abuse of discretion to lift the stay on the basis of the other grounds cited. *See, e.g.*, *In re Bogdanovich*, 292 F.3d 104, 110 n. 1 (2d Cir. 2002) (listing judicial economy, burden to debtor, bankruptcy estate and creditors as proper considerations in deciding to lift automatic stay that arose after debtor filed for Chapter 7 bankruptcy); *In re Garzoni*, 35 Fed.Appx. 179, 181 (6th Cir. 2002) (same); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) (bankruptcy court has discretion to lift stay that arose from filing of Chapter 7 petition if prejudice to creditors of being forced to litigate only in bankruptcy court outweighs prejudice to debtor and the bankruptcy estate from litigation outside the bankruptcy court); *In re Tricare Rehab. Sys., Inc.*, 181 B.R. 569, 574 (Bankr. N.D. Ala. 1994) (noting that judicial economy and whether a different court is better suited to determine the issues because of experience may be considered in deciding whether to lift an automatic stay). Because the Bankruptcy Court's conclusions rationally flow from its factual findings, there is no basis for finding that the Bankruptcy Court's conclusion was an abuse of its discretion.[7]

---

[7] Although Mack disputes the Bankruptcy Court's findings that the prejudice to the Appellees outweighs the prejudice to the debtor and that allowing the Kentucky Case to proceed would not prejudice the bankruptcy estate, he does not contend that these are improper considerations. (*See* Doc. No. 1; Doc. No. 26). In fact, Mack admits that it was proper for the Bankruptcy Court to balance the prejudices to the debtor and creditor and consider which forum would be a more efficient use of judicial resources. (Doc. No. 26, p. 10).

## II.   The Bankruptcy Court did Not Abuse its Decision in Deciding to Abstain from Hearing Appellees' Claims Against Mack.

Title 28 U.S.C. Section 1334(c)(1) allows the Bankruptcy Court to voluntarily abstain from hearing certain Bankruptcy cases by providing that:

> nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

*Id.* The prospect of abstention may be raised by the parties or by the Court *sua sponte*. *Carver v. Carver*, 954 F.2d 1573, 1579 (11th Cir. 1992).

Mack incorrectly contends that abstention is only proper when there are difficult questions of state law or a unique state interest. (Doc. No. 26, p. 16). Abstention in the interests of justice is not limited to state law claims but may be invoked to avoid deciding federal claims. *In re Apex Oil Co.*, 980 F.2d 1150, 1152-53 (8th Cir. 1992). Bankruptcy courts generally consider the following factors in order to determine whether abstention is proper:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*E.g., Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993). However, this list is not exhaustive and no one factor is determinative. *Id.* Other courts have

considered factors such as the need for finality or the other forum's familiarity with the facts and circumstances of the case. *See In re Reak*, 92 B.R. 804, 807 (Bankr. E.D.Wis. 1988) (abstention was appropriate although bankruptcy court had concurrent jurisdiction with the state court the state court was in a better position to adjudicate the claim because it was more familiar with the facts and circumstances of the case); *In re Cache, Inc.*, 71 B.R. 851, 852 (Bankr. S.D. Fla. 1987) (if mandatory abstention was not proper, then permissive abstention would be proper because "resolution of this major claim will, almost certainly, require District Court review by appeal of this court's summary determination. The District Court already has this matter pending before it and can decide this matter with greater finality and more rapidly if this court abstains than it could if it must await and exercise its appellate jurisdiction.")

Mack's only allegation is that the Bankruptcy Court's decision to abstain was an abuse of discretion because the Bankruptcy Court's order "did not state any reason, basis or explanation for the abstention." (Doc. No. 26, p. 17). Accordingly Mack claims that the Bankruptcy Court made its decision to abstain without considering any factors. (*Id.*) Mack's argument is not well taken. A court abuses its discretion by failing to articulate specific factors when there is no basis for the conclusion in the record. *See In re W. Pac. Airlines, Inc.,* 263 B.R. 345, 347 (D. Colo. 2001); *cf., United States v. Brandenburg,* 157 Fed. Appx. 875, 879 (6th Cir. 2005) ("[A] district court's failure to articulate reasons for conditions [for supervised release] is harmless error where the reasons are obvious from the record."); *In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 391 (4th Cir. 2005) ("As long as a district court's reasons for denying leave to amend are apparent, its failure to articulate those reasons does not amount to an abuse of discretion.").

Although the paragraph of the Bankruptcy Court's Order which discusses the permissive abstention provision does not include specific discussion of the abstention factors, many of the factors are discussed in relation to the decision to lift the automatic stay. (*See* Doc. No. 1-2). Thus, the Bankruptcy Court's Order provides ample support for the decision to abstain. First, the Bankruptcy Court found that allowing the Kentucky Case to proceed would not unduly prejudice the bankruptcy estate and that proceeding in the Bankruptcy Court would severely prejudice Appellees. (Doc. No. 1-2, p. 4). As previously discussed, these findings are not clearly erroneous. *Infra* Analysis, Part I.A. Second, the Kentucky Case was filed in 2002 and involves both RICO and state law claims. (*See* Doc. No. 3-13). Because there have been extensive proceedings in the Kentucky Case, that court is much more familiar with the law, the facts, and the parties. (*See* Doc. No. 3-8). Thus, judicial economy also favors abstention. Finally, there is potential evidence of forum shopping because the Bankruptcy Court found that Mack filed for bankruptcy to avoid final default judgment in the Kentucky Case. (Doc. No. 1-2, pp. 3-4). The Bankruptcy Court made factual findings which were not clearly erroneous and applied the correct legal standard. Therefore its decision to abstain was not an abuse of discretion.

## Conclusion

The Court **AFFIRMS** the Bankruptcy Court's Order (Doc. No. 1-2) and **DISMISSES** the Appeal (Doc. No. 1).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on April 23, 2007.

_/s/ Patricia C. Fawsett_
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record